**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RED BULL GMBH, an Austrian company, and RED BULL NORTH AMERICA, INC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> UNION CITY BEVERAGE, INC. a/k/a LOS COMPADRES GROCERY, a New Jersey corporation, and ERIS RODRIGUEZ *a/k/a* Eric Rodriguez, an individual <br><br> Defendant. | Civil Action No. _____ <br><br><br><br> **COMPLAINT** |

**COMPLAINT**

1.      Plaintiffs Red Bull GmbH and Red Bull North America, Inc. (collectively, "Red Bull") bring this action to stop the unlawful marketing, promotion, distribution, and sale of Red Bull Energy Drink that was never approved, authorized, or intended for sale in the United States and is only authorized for sale in specific foreign countries or regions abroad ("Gray Market Red Bull Energy Drink").

2.      For health and safety reasons, beverages are some of the most highly regulated products sold to consumers, and Red Bull takes the health and safety of its customers extremely seriously and therefore tailors its products, associated labeling, and distribution channels based on the intended geographic region or country of sale and all relevant government and regulatory requirements.

3.      Gray Market Red Bull Energy Drink, which is materially different than Red Bull Energy Drink that is authorized for sale in the U.S., poses potential concerns to U.S. consumers. For example: Gray Market Red Bull Energy Drink does not travel through the Red Bull authorized and vetted supply chains and is therefore not subject to Red Bull's quality control standards, it cannot be traced and pulled from the market in case of a recall, the labeling does not meet FDA requirements and may pose a risk to consumers who are sensitive to certain ingredients, the expiration date is in an unfamiliar format that is likely to be misinterpreted by U.S. consumers, and other wording on the product, including ingredients, may be in a language other than English.

4.      Gray Market Red Bull Energy Drink is deceptively presented to consumers as product that is compliant with all local laws and is authorized by Red Bull for sale in the U.S., and has been marketed and sold to unwitting consumers here in New Jersey and elsewhere.

5.      This unauthorized and unlawful sale of Gray Market Red Bull Energy Drink not only presents concerns to innocent consumers but is also harming the strong reputation Red Bull has earned over many years for producing high-quality beverages which comply with all local laws.

6.      Red Bull cannot stand idly by while beverages that are not subject to the appropriate quality-control protocols and U.S. labeling regulations are sold to unwitting consumers all while carrying its famous trademarks.

7.      Therefore, Red Bull brings this action for trademark infringement, unfair competition, dilution, and counterfeiting in violation of federal and state law.

8.      Among other damages and monetary relief, Red Bull asks that the Court permanently enjoin Union City Beverage, Inc. and Eric Rodriguez from importing, marketing, promoting, distributing, or selling Gray Market Red Bull Energy Drink.

**PARTIES**

9.      Plaintiff Red Bull GmbH is an Austrian company with its principal place of business at Am Brunnen 1, 5330 Fuschl am See, Austria.

10.      Plaintiff Red Bull North America, Inc. is a California corporation with its principal place of business at 1740 Stewart Street, Santa Monica, CA 90404 and the wholly owned subsidiary of Red Bull GmbH.  Red Bull GmbH and Red Bull North America, Inc. are collectively referred to herein as "Red Bull."

11.      On information and belief, defendant Union City Beverage, Inc. a/k/a Los Compadres Grocery, ("Union City"), is a New Jersey corporation with a place of business at 716 22nd St., Union City, NJ 07087-2107.

12.      On information and belief, Eris Rodriguez is an individual residing in New Jersey at an address of 201 71st St., Apt. 2L, Guttenberg, NJ 07093-3411.

13.      On information and belief, Mr. Rodriguez also goes by Eric Rodriguez.

14.      On information and belief, Mr. Rodriguez is a corporate officer and specifically, the owner, president, and registered agent of Union City, and has directed and exercised control over Union City's infringing activities complained of herein.

**JURISDICTION AND VENUE**

15.      This Court has jurisdiction because (1) this is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.* (the Lanham Act), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b); and (2) this is a civil action

between citizens of New Jersey on one side and citizens of Austria and California on the other side, in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332.  In addition, the Court has subject matter jurisdiction over Red Bull's state-law claims under 28 U.S.C. § 1367(a) because they are so related to Red Bull's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this district, and under 28 U.S.C. § 1391(b) and (c) because Union City is subject to personal jurisdiction in this district.

17.     This Court has personal jurisdiction over Union City and Mr. Rodriguez because they both reside in New Jersey (where, on information and belief, Union City has its principal place of business and registered address and Mr. Rodriguez is domiciled), and because both defendants acted knowingly and willfully to sell infringing Gray Market Red Bull Energy Drink to customers in New Jersey, thus committing an intentional tort in New Jersey and directed at New Jersey.

## FACTS UNDERLYING RED BULL'S CLAIMS

### RED BULL'S FAMOUS TRADEMARKS

18.     Red Bull is engaged in the manufacture, distribution, sale, and marketing of various goods and services, including its famous Red Bull Energy Drink and other beverage products (collectively, "Red Bull Products"), throughout the United States and in 173 other countries around the world.

19.     Since entering the United States market in 1996, the Red Bull Energy Drink has achieved enormous success through extensive marketing and promotional efforts, including in New Jersey. Red Bull has been the leading product in its industry for over 20 years. From 2005 to 2022, Red Bull sold over 38.5 billion units of Red Bull Energy Drink in the United States—over 4 billion units in 2022.

20.     Since long prior to the acts complained of herein, Red Bull has made extensive and continuous use in the United States and in New Jersey of the trademarks RED BULL, RED

**Red Bull**

BULL & Double Bull Design, _____, RED BULL ENERGY DRINK & Blue/Silver

Quadrant Design, _____, VITALIZES BODY & MIND, and variations of these marks (collectively, "RED BULL Marks") on and in connection with its Red Bull Products.

21.     Red Bull owns, among many others, the following federal trademark registrations issued by the United States Patent and Trademark Office for the RED BULL Marks used on and in connection with the Red Bull Energy Drink and other Red Bull Products:

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|
| RED BULL | 3,092,197 | May 16, 2006 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |
| | 2,946,045 | May 3, 2005 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|
| **Red Bull** | 3,197,810 | January 16, 2007 | Soft drinks and sports drinks in Class 32 |
| VITALIZES BODY AND MIND | 3,440,484 | June 3, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |
|  | 3,479,607 | August 05, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |

22.     These federal registrations are valid, subsisting, and incontestable, and they constitute conclusive evidence of Red Bull's exclusive right to use the RED BULL Marks for the goods specified in the registrations. 15 U.S.C. §§ 1065, 1115(b).

23.     Copies of the certificates of registration for the RED BULL Marks, as well as printouts from the United States Patent & Trademark Office website showing the current status of those registrations, are collectively attached as **Exhibit 1**.

24.     From 2005 to the present, Red Bull has spent billions of dollars advertising and promoting the Red Bull Products and the RED BULL Marks in the United States.

25.     Red Bull advertises the Red Bull Products featuring the RED BULL Marks in the United States through various means, including electronic media (e.g., "Red Bull TV"—a multi-platform digital video service that features programming from the world of Red Bull on an extensive selection of sports, music, and lifestyle entertainment events), television commercials

(e.g. commercials featuring the famous "Red Bull gives you wings" slogan), print media (e.g., Red Bull's "The Red Bulletin" magazine), and other promotional and point of sale materials (e.g., billboards, in-store displays, sampling cars, and Red Bull branded coolers). In addition, Red Bull promotes the RED BULL Marks in connection with the sponsorship of numerous athletes, ownership of sports teams, and organization of numerous events. Hundreds of thousands of spectators have witnessed Red Bull's events in the United States, further strengthening Red Bull's brand recognition and building up the goodwill in the RED BULL Marks. In addition, Red Bull has over 49 million followers on Facebook, over 2 million followers on Twitter, over 17 million followers on Instagram, and over 11 million subscribers to its YouTube channel. It also owns additional social media pages in relation to its sports teams, athletes, and events it sponsors, for example, its "Red Bull Racing" Instagram page has over 9.6 million followers. *See* **Exhibit 2**.

26.     As a result of Red Bull's extensive sales, promotion, and advertising of the Red Bull Products, the RED BULL Marks have become famous among the general consuming public of the United States and of New Jersey, and represent an extraordinarily valuable goodwill to Red Bull. In fact, the RED BULL Marks are consistently ranked in the top 100 most valuable brands worldwide.

### GRAY MARKET RED BULL ENERGY DRINK

27.     In addition to its activities in the United States, Red Bull and its related entities are engaged in the manufacture, distribution, sale, and marketing of energy drinks bearing the RED BULL Marks outside the United States. Such products, Gray Market Red Bull Energy Drink, are only authorized for sale in the specific foreign countries or regions for which they are intended and are not authorized for sale in the United States.

28.     Gray Market Red Bull Energy Drink is tailored to the specific geographic region or country for which it is intended and authorized. Depending on the intended geographic region or country, Gray Market Red Bull Energy Drink and its packaging reflects material differences in terms of language and spelling, government regulations, units of measurement, disclaimers and disclosures, prices, and warranties, among other things.

29.     Red Bull and its related entities appoint distributors or agents in particular geographic regions or countries to maintain the quality associated with products bearing the RED BULL Marks within each specific region or country.

30.     Gray Market Red Bull Energy Drink is not authorized or intended for exportation out of its intended region or country, or for importation into, sale, marketing, or distribution in the United States.

31.     Indeed, the International Trade Commission ("ITC") has issued a General Exclusion Order that bars the importation into the United States of all Gray Market Red Bull Energy Drink, irrespective of the identity of the importer. *See In the Matter of Certain Energy Drink Products*, Inv. No. 337-TA-678 (CIT Oct. 1, 2010), order attached as **Exhibit 3**.

32.     Red Bull has successfully taken action to stop the unauthorized and unlawful importation and sale of Gray Market Red Bull Energy Drink in the past, which harms Red Bull and the public. *See, e.g., Red Bull GmbH et. at. v. Gale Wholesale,* LLC, 1:18-07552-VSB-SN (S.D.N.Y. Dec. 27, 2019) (awarding permanent injunction and $36,803 damages award); *Red Bull GmbH, et al v. Vikisha Inc.*, 2:18-cv-8485-JLL-JAD (D.N.J Nov. 14, 2018) (awarding permanent injunction and profits); *Red Bull GmbH, et al. v. The Trading Group Inc.*, 18-cv-03764-LGS (S.D.N.Y. Oct. 4, 2018) (awarding permanent injunction and $120,694.08 damages award); *Red Bull GmbH et. al. v. Kassir Co. et. al.*, 1:06-cv-2301-CC (N.D. Ga. Feb. 11, 2009)

(entering permanent injunction and $2.1 million damages award); *see also Red Bull GmbH et. al. v. Milton Petroleum, LLC*, 2:19-cv-00715-KM-JBC (D.N.J. May 15, 2019); *Red Bull GmbH et. al. v. Capitol Cash & Carry*, 1:18-cv-01003-PLF (D.D.C. June 28, 2018).

## DEFENDANTS' UNLAWFUL ACTIVITIES

33.     Union City, under the direction and management of Mr. Rodriguez, sells, promotes, markets, distributes, and authorizes, or otherwise contributes to the importation, sale, promotion and/or distribution of Gray Market Red Bull Energy Drink that is intended for sale in foreign countries, including, but not limited to Turkey and South Africa, and not authorized for sale in the United States.

34.      Union City has marketed, promoted, sold, and arranged for the shipment of more than a thousand cases of Gray Market Red Bull Energy Drink to at least one wholesale customer in New Jersey. On information and belief, Union City sold Gray Market Red Bull Energy Drink to many other retailers and consumers located in the United States, including in New Jersey.

35.     On information and belief, in November of 2021, Union City sold at least 1,280 cases of Gray Market Red Bull Energy Drink for a total of $39,040 to a wholesale customer.

36.     On information and belief, Union City continued to sell Gray Market Red Bull Energy Drink throughout 2021 and 2022 and is still selling Gray Market Red Bull Energy Drink.

37.     On information and belief, Mr. Rodriguez is not only a corporate officer (president and owner) of Union City, but has been the central figure in, and personally directed, the purchase, marketing, promotion, sale, and distribution of the Gray Market Red Bull Energy Drink sold by Union City.

38.     The Gray Market Red Bull Energy Drink sold by Union City and Mr. Rodriguez (collectively, the "Defendants") is materially different in many respects from the Red Bull

Energy Drink authorized for sale in the United States. For example, Gray Market Red Bull Energy Drink products:

a.     do not travel through authorized supply chains and are therefore not subject to Red Bull's quality control standards, such as transporting the Red Bull Products in climate-controlled containers or in a manner that ensures the cans do not get dents and nicks which may result in a can that looks to be an inferior product and may also result in leakage or a loss of carbonation;

b.     do not contain the adequate UPC Code to track the product in case of a recall;

c.     present nutrition information in a manner that does not comply with the requirements of the Food and Drug Administration;

d.     are missing beverage container deposit information required by several U.S. states;

e.     include spellings of words that are different from those of American English, such as "colour," or "flavouring" with which U.S. consumers are unfamiliar;

f.     present the expiration date in a manner with which U.S. consumers are unfamiliar, i.e., DD-MM-YYYY, and which may not allow the consumer to determine the correct expiration date of the product; and

g.     present volume and nutrition information using the metric system instead of the standard system of measurement that U.S. consumers recognize.

**FIRST CLAIM FOR RELIEF**
**(TRADEMARK INFRINGEMENT IN VIOLATION OF**
**<u>SECTION 32 OF THE LANHAM ACT)</u>**

39.    Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

40.    Without Red Bull's consent, Defendants have used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink.

41.    Defendants' conduct has caused or is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Gray Market Red Bull Energy Drink, in that retailers and consumers are likely to believe that Red Bull has authorized Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

42.    Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with retail accounts and consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

43.    Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

44.    On information and belief, Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

45.    Defendants' acts constitute an infringement of Red Bull's trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

46.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa, as well as to Defendants' profits, Red Bull's reasonable attorneys' fees, and any other remedies provided by 15 U.S.C. § 1116 and 1117.

### SECOND CLAIM FOR RELIEF
### (UNFAIR COMPETITION IN VIOLATION OF
### SECTION 43(a) OF THE LANHAM ACT)

47.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

48.     Without Red Bull's consent, Defendants have used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink.

49.     Defendants' conduct has caused or is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Gray Market Red Bull Energy Drink, in that retailers and consumers are likely to believe that Red Bull has authorized Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

50.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with retail accounts and consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

51.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

52.     On information and belief, Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink have been committed deliberately and willfully, with knowledge of Red Bull's exclusive common law rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

53.     Defendants' acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa, as well as to Defendants' profits, Red Bull's reasonable attorneys' fees, and any other remedies provided by 15 U.S.C. § 1116 and 1117.

### THIRD CLAIM FOR RELIEF
### (COUNTERFEITING IN VIOLATION OF
### SECTION 32 OF THE LANHAM ACT)

55.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

56.     Without Red Bull's consent, Defendants have used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, promotion, and/or

advertising of Gray Market Red Bull Energy Drink, which are goods for which the RED BULL Marks are registered on the Principal Register.

57.     Defendants' conduct has caused or is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Gray Market Red Bull Energy Drink, in that retailers and consumers are likely to believe that Red Bull has authorized Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

58.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with retailers and consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

59.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

60.     On information and belief, Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

61.     Defendants' acts constitute counterfeiting in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

62.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa, as well as to Defendants' profits, Red Bull's reasonable attorneys' fees, and any other remedies provided by 15 U.S.C. § 1116 and 1117, including statutory and/or treble damages.

### FOURTH CLAIM FOR RELIEF
### (DILUTION IN VIOLATION OF
### SECTION 43(c) OF THE LANHAM ACT)

63.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

64.     The RED BULL Marks are famous and are widely recognized by the general consuming public of the United States as a designation of source of the Red Bull Products, including the Red Bull Energy Drink.

65.     Defendants' acts as described herein began after the RED BULL Marks became famous.

66.     Defendants' acts are  likely to cause and have caused dilution by: 1) tarnishment by associating the RED BULL Marks with products that are not authorized for sale and feature material differences from products authorized for sale in the United States; and 2) blurring by diminishing and harming the distinctiveness and goodwill associated with the famous RED BULL Marks, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

67.     On information and belief, Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the

famous RED BULL Marks and with a bad faith intent to cause dilution and trade on Red Bull's

goodwill.

68.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so

damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate

remedy at law. If not restrained, Defendants will have unfairly derived and will continue to

unfairly derive income, profits, and business opportunities as a result of their acts of dilution.

Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining

Defendants from selling Gray Market Red Bull Energy Drink, including, but not limited to,

products intended for sale in Turkey and South Africa, as well as to Defendants' profits, Red

Bull's reasonable attorneys' fees, and any other remedies provided by 15 U.S.C. § 1116 and

1117.

**FIFTH CLAIM FOR RELIEF**
**(UNFAIR COMPETITION IN VIOLATION OF N.J.S.A. 56:4-1)**

69.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

70.     Without Red Bull's consent, Defendants have appropriated for their own use Red

Bull's RED BULL Marks.

71.     Without Red Bull's consent, Defendants have used the RED BULL Marks in

commerce in connection with the sale, offering for sale, distribution, promotion, and/or

advertising of Gray Market Red Bull Energy Drink.

72.     Defendants' conduct has caused or is likely to cause confusion, mistake, or

deception as to the source of origin, sponsorship, or approval of Gray Market Red Bull Energy

Drink, in that retailers and consumers are likely to believe that Red Bull has authorized

Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market

Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

73.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with retailers and consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

74.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

75.     On information and belief, Defendants' sale, offering for sale, distribution, promotion and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

76.     Defendants' acts constitute unfair competition in violation of N.J.S.A. 56:4–1.

77.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa, as well as other remedies provided by N.J.S.A § 56:4-2.

## SIXTH CLAIM FOR RELIEF
### (DILUTION IN VIOLATION OF N.J.S.A. 56:3-13.20)

78.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein

79.     The RED BULL Marks are famous and are widely recognized by the general consuming public of the United States and of New Jersey as a designation of source of the Red Bull Products, including the Red Bull Energy Drink. Defendants' acts as described herein began after the Red Bull Marks became famous and have diluted the distinctive quality of the famous RED BULL Marks in violation of N.J.S.A. 56:3-13.20 by both blurring and tarnishment.

80.     On information and belief, Defendants' sale, offering for sale, distribution, promotion and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the famous RED BULL Marks and with a bad faith intent to cause dilution of the RED BULL Mars.

81.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law.  If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution, leaving Red Bull without control of its reputation and a loss of its goodwill. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa, as well as to Defendants' profits and other remedies provided by N.J.S.A. 56:3-13.20.

## SEVENTH CLAIM FOR RELIEF
### (UNFAIR COMPETITION IN VIOLATION OF NEW JERSEY COMMON LAW)

82.     Red Bull re-alleges the foregoing paragraphs as if fully set forth herein.

83.     Defendants have knowingly and willfully used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink, and have passed off these goods as authorized Red Bull Energy Drink. Defendants' conduct has caused or is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Gray Market Red Bull Energy Drink, in that retailers and consumers are likely to believe that Red Bull has authorized Defendants' sale, offering for sale, distribution, promotion, and/or advertising of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

84.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with retailers and consumers in the United States by creating confusion about, and dissatisfaction with, Red Bull Energy Drink.

85.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's control over its business and business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

86.     Defendants' acts constitute unfair competition in violation of New Jersey common law.

87.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law. Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not

limited to, products intended for sale in Turkey and South Africa, as well as to Defendants'
profits and other remedies provided by New Jersey law.

## **PRAYER FOR RELIEF**

WHEREFORE, Red Bull prays that:

1.      Defendants, their successors, assigns, affiliates, subsidiaries, officers, employees, agents, representatives, and all others in active concert or participation with them, be permanently enjoined from the importation into, and the dealing, marketing, promotion, sale or distribution in the United States, of Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in Turkey and South Africa;

2.      Defendants, and all others holding by, through or under Defendants, be required, jointly and severally, to:

   a.      account for and pay over to Red Bull all profits derived by Defendants from their acts of trademark infringement, dilution, counterfeiting, and unfair competition in accordance with 15 U.S.C. § 1117(a) and New Jersey statutory and common law, and Red Bull asks that this award be trebled in accordance with 15 U.S.C. § 1117(a) and New Jersey Stat. §§ 56:3-13:20 and 56:4–2;

   b.      pay to Red Bull the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with 15 U.S.C. § 1117(a);

   c.      pay to Red Bull statutory damages of $2,000,000 per counterfeit mark used on Gray Market Red Bull Energy Drink in accordance with 15 U.S.C. § 1117(c)(2);

   d.      destroy all of the Gray Market Red Bull Energy Drink in its possession,

including packaging, and any advertising, marketing, or promotional materials that include or are for Gray Market Red Bull Energy Drink;

e.    send a notice to any existing customers that the importation, dealing in, sale, marketing, promotion, or distribution of Gray Market Red Bull Energy Drink in the United States is unlawful and that Defendants have been enjoined by a United States District Court from doing so; and

f.    file with the Court and serve on Red Bull an affidavit setting forth in detail the manner and form in which they have complied with the terms of the injunction, in accordance with 15 U.S.C. § 1116.

3.    Red Bull has such other and further relief as the Court deems just and equitable.


DATED:  May 10, 2023                Respectfully submitted,
                                    KILPATRICK TOWNSEND & STOCKTON LLP


                            By:    */s/ Barry M. Benjamin*
                                   Barry M. Benjamin (Attorney ID: 044001993)
                                   The Grace Building
                                   1114 Avenue of the Americas
                                   New York, New York  10036
                                   Telephone:  (212) 775-8783
                                   Facsimile:  (212) 775-8817
                                   *bbenjamin@kilpatricktownsend.com*

                                   Caroline Y. Barbee (*Pro Hac Vice* To Be
                                   Filed)
                                   1801 Century Park East, Suite 2300
                                   Los Angeles, California 90067
                                   Telephone:  (310) 777-3735
                                   Facsimile:  (310) 388-3125
                                   *cbarbee@kilpatricktownsend.com*

                                   *Attorneys for Plaintiffs*